Chief Justice Robertson
delivered the opinion of the court.
Samuel Jesse, filed a bill in chancery injoining a judgment which Helm had obtained against him on a promissory note. The ground upon which relief is sought, is an alleged exaction of usurious interest by Helm, and by Fry, who, in ISI9, assigned to Helm a note on Jesse, which formed a part of the consideration, for which, the- note on which the judgment 0- as obtained, had been given.
Jesse states, that in 1819, he owed Fry a large sum for loans made to him by Fry, and that on the 4th of Mav, 1819, he had given to him a promissory note for §394 for usurious interest reserved on the loans; that Fry assigned that note to Helm and drew aoorderonhim (Jesse) in favor of Helm, for §722,in consideration whereof he executed to Helm, on the 25th of May, 1819, a note for §1,193, payable in eight months; that on the 12th of October, 1819, he paid to Helm ‡509 in a bill of exchange for that amount, and then took up the note for- ,§1,193 and substituted a new note fop §693, payable the 1st of May, 1820; that on the 18th of November, 1E20, he paid to Helm §441, in promissory notes on other persons for that sum, and thereupon took up the note for §693 and gave a new note for §394, to injoin the judgment on which the bill was filed.
*429 Fry, who was made a defendant, does not admit the allegation of usury as to himself. But his answer on that point is not very distinct or positive.
Helm requi 'es proof of the charge that the note assigned to him by Fry was usurious. He admits that a note was execute d to him by .Jesse, on the ’¿5th of May, 1819, payable in eight months, in consideration of the note for $391, and of the order for $722, but, without stating, directly, the amount of the note, Ik* says that it was given for <'1,116; the aggregate ofthe order and of the note for $334; as Jes. 'had stated.
He admits the payment' of some sum in a bill of exchange, on the Flu of October, 1819, rut averring tha the does not recollect the amount of tae bill; denies that it was as much as §'503, and alleges that a part of it was applied to the extinguishment of an open account which he held on Jesse for property which he had sold to him. He admits the payment of promissory notes, on the 18th of November, 1820, for §141, but insists that those notes were received at a discount; the rate of discount is not directly stated. But he denies the charge of usury, and avers that he never charged or received more than six per cent, interest, except in the discount on the promissory notes and bill of exchange, and says, that in that way, he may have received ten per cent.
During the pendency of the suit, Jesse paid to Helm §358 in notes of the bank of the Commonwealth, which though greatly depreciated, seem to have been received at their nominal amount.
The foregoing is the substance of all the facts cobtained in the record, which consists merely of various allegations and responses in bills, cross-bills, and answers.
It will be seen at once, that the ca=e was loosely managed and imperfectly prepared; and that it is difficult, if not impossible, to ascertain certainly from the record, the exact measure of right between the parties. We must, therefore, decide the case according to such deductions from vague and indeterminate facts as shall appear to be ’most rational, considering as we should do. the peculiar character of the controversy.
*430 For want of any proof affecting Helm, prior to the-date of hisfirst note, executed on the 25th of May, 1819,' we cannot cons:der the case as infected with usury pri- or to that time. The amount of that note has not been clearly shown. But we must presume that Helm knew what its amount was; he has not said directly that it was not $1,193; or, that it was only $1,116; as it was made .payable eight months after date, the probability is strong that its amount exceeded §1,116,. which did not quite equal the amount due at its date; consequently, considering the nature of the allegation by Jesse, and of the answer by Helm, we must infer that the amount of the note was $1,193. Calculating interest on the note for $394 from its date, until’ 25th of May, 1819, the consideration of the note for $1,193 may be stated at $1,117 30 cents; that sum with legal interest upon it for eight months, would make only about $1,162; and consequently, the note • dated tiie 25th of May, 1819, contained about $31 of usury.
If’ Helm had taken the bill of exchange and promissory notes at a reasonable discount, he would not thereby have been guilty of an usurious exaction. But there is no proof that there was any such discount, and Helm has not even intimated what its rate was. Therefore, we have no authority to presume that there was any discount, or to assume its rate; and consequently, Jesse must be considered as entitled to a credit for the actual amount of the bill and notes. We must infer that the amount of the bill of exchange was $509, and that Jesse was entitled to a credit on his note for that sum. If. Jesse had not been entitled to a credit for as much as $509, there would have remained due to Helm more than $694, the amount for which the note was given on the 12th of October, 1819, and payable in May, 1820., As the bill was paid in advance, after deducting $509, the balance due with legal interest until May, 1820, would’have been about $694. Wherefore, crediting Jesse with $509, on the 12th of October, 1819; the note of that date for $693, payable on the 1st of May, 1820, contained’no more than the original usury, $31.
Although the holder of a note, which contains usury, has received as much Commonwealth’s bank paper, in discharge of it, as nominally amounts to the entire sum called for by the note, yet, he has received -<o usury, unless, the Commonwealth’s bank paper, accepted by him m discharge of the note, amounts in real value to more than what was legally clue.
Aexecutes his note to Bfor $1000, containing $200 of usury, A pajs B $1000 in Commonwealth’s bank notes, when ■ at a depreciation of 50 per cent., aud, thereupon, B surrenders the note to A., in ki! oil case, A cannot recover o B the $'lu(i of usury which the note coiituined.
*431 ' According to the foregoing data, there remained li> ¿¡¡ally due to Helm, on the 18th of November, 1820, about $213, instead of $394, for which, on that day, the note was given on which the judgment was obtained; and consequently, on the 20th-of September, 1823, when the judgment was injoiued, the amount legally due was about $283 50 cents, besides the costs of the common law suit.
On the 12th of Angust, 1821, Jesse paid Helm $68; on the 25th of Jamuny, 1825, he paid him 8290; and on the 1st of February, 1826, he paid him $90. Hut these payments were all made in Commonwealth’s notes, received at their nominal amount; or rather in specie at double the amount actually paid; thus, for example, the payment of $200 was made in a nole on the United States Hank for only $100; that being then equal to $200, in notes of the bank of the Commonwealth. Now, as Helm chose to receipt for double the value of the payments actually made, Jesse is entitled to a credit for the whole amount so acknowledged to be paid. But if the value of those payments did not exceed the amount legally due to Helm, ■Jesse has paid no usury.
If the amount legally due to Helm, at the date of the note for $394, was $243; that note contained only $151 of usury. The difference between the nominal amount for which he afterwards receipted, and the actual value of what he received exceeded $151. Therefore, the chancellor should not decide that usury had been paid, or infected the judgment; but the conclusion, in equity is, that the case has been purged of usury.
Suppose, for example, a promissory note from A to B for $T,0i)0, contain $200 of sury, and that A pay to B §1,090 in noieson the bank of the Commonwealth, when at a depreciation of fifty per centum, or pays to him their equivalent, 8509, in specie, in consideration whereof, B surrenders the no!e to A. Now, on a bill filed by A against B to recover the $200 of usury, a chancellor would surely not decree in favor of A. He could not do so, because $800 being the amount legally due, and only \-500 having been paid, no usury had been paid, and even the principal and legal interest had not been paid. But as to the principal and lo- *432 gal interest, B would nave no further claim, because ht bad chosen to acknowledge the receipt of them in a payment of less value than their amount. If A loan to A $ L0j,and take his note for $200, and afterwards accept $10'.), or its eq-ii/alent in Commonwealth’s paper, (.$200,) in discharge of Le note, he would no longer have any just or legal claim on A; and A could not ‘complain of any usurious exaction. If A could recover $100 for usury, tnen B would not, after such restitution, have received one cent for tire $100 which he had loaned to A. Such an unjui-t and absurd consequence sufficiently proves the equity of the rule which we have suggested, and the palpable unreasonableness and injustice of its converse. This rule of equity could no.’ have applied to this case if slelmhad accepted, at more I ban its value, a commodity, (horses for instance,) the value of which was no fixed, like that of currency, but depended on the unite and judgment of men. in such a case, his o vn e-aim ue of the property would have been decisive, unless it had been taken at a price so disproportionate to its real value, as to evince an intention to have waived the usury. But currency cannot be estimated at more than its current value. Besides, the payments made to Helm were in specie, the amount of which, was duplicated in his receipts; instead of $358 he received only $179. It seems to us, therefore, that the chancellor should not charge Helm with usury; and that conscqucntl), j esse is entitled to a credit for only the nominal amount of his fhree la,t receipts, after deducting the amount of the usury, or (which is the same thing in effect;) Helm is enti led to tne whole amount of bis judgment,. .nd j esse is entitled to the whole amount of his receqb*;; and thus a balance will be ascertained to be due to 11. Jm, for which the circuit court ought to have dissolved the injunction with damages, but without costs, as Jesse seems to have had some equity when he filed his bill.
Ji ^ loan B $ 00, and take nis note for íj'iOO. ¡I .id afterwards accept 4100, or its equivalent, ■'■¿ilt’in Co anno tf wealth’s pa- ; r, in dis- , of the r,.-,e, he has oo louder any pisi or lejral claim on B. Nor in such case, can B complain of any usurious exaction.
Even such a decree will not give to Helm 'the value of his principal and its legal interest; because, a part of his judgment will still have been paid in a commodity, worth only half as much as Jesse has been credited for it; and in the payments made mtue bill of ex-cha ige and promissory noíes, w ich as th i case stands, we have felt compelled to consider as of their noipj' *433 mil value, when ¡t is far from being improbable that they were not worth so much, and were taken for less.
Denny, for appellant; Crittenden, for appellee.
Decree reversed, and cause remanded, with instructions to enter a decree conformably to this opinion. Jesse must pay to Helm his costs in this court.